## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

MCKINLEY ALLIANCE GROUP, LLC and
AYSHA COOPER,

Plaintiffs,

v.

SARAH ADULT DAY SERVICES, INC.

Defendant.

Docket No.:

## <u>NOTICE OF REMOVAL</u>

**TO:   The Judges of the United States District Court**
**For the Northern District of Georgia**

Please take notice that Defendant Sarah Adult Day Services, Inc. ("Sarah"), by and through

its undersigned counsel, pursuant to 28 U.S.C. §§ 1441 and 1446, hereby files this Notice of

Removal of this case from the Superior Court of Gwinnett County Georgia, where it is now

pending, to the United States District Court for the Northern District of Georgia on the grounds set

forth below.

1.     Plaintiffs commenced this action by filing a complaint on April 12, 2019, in the

Superior Court of Gwinnett County, State of Georgia, docketed as No. 19-A-03474-9 (the

"Complaint").  A copy of Plaintiffs' complaint is attached as Exhibit "A."

2.     Sarah was served with the Summons and Complaint on April 19, 2019.

3.     A copy of the Docket of the action before the Superior Court of Gwinnett County

and docketed as No. 19-A-03474-9, is attached as Exhibit "B."

4.      Less than thirty (30) days have passed since Sarah was served with the Complaint from which it first ascertained that the case is removable.  Therefore, removal is timely pursuant to 28 U.S.C. § 1446(b).

5.      The Complaint states that Plaintiff Aysha Cooper ("Cooper") is a resident of Georgia.

6.      The Complaint also states Plaintiff McKinley Alliance Group, LLC ("McKinley") is Georgia limited liability company, with its business address in Gwinnett County, Georgia.

7.      Furthermore, the Complaint states that Cooper is the sole owner of McKinley.

8.      Therefore, Cooper and McKinley are citizens of Georgia.

9.      Sarah is an Ohio corporation with its principal place of business at 4580 Stephen Cir NW, Suite 200, Canton, Ohio 44718.

10.     Plaintiffs seek injunctive relief to enjoin Sarah from enforcing a non-compete obligation in the Franchise Agreement between Plaintiffs and Sarah which would prevent Plaintiffs from selling the business for an estimated value of $570,000.

11.     Therefore, this Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

12.     The present lawsuit is accordingly removable from the state court to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

13.     Written notice of the filing of this Notice of Removal has been given to Plaintiffs in accordance with 28 U.S.C. § 1446(d) and as noted in the attached Certificate of Service.

14.     Promptly after filing with this Court and with the assignment of a Civil Action Number, a copy of this Notice of Removal will be filed with the Superior Court of Gwinnett County, State of Georgia in accordance with 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants respectfully requests that it may effect the Removal of this action from the Superior Court of Gwinnett County, State of Georgia to the United States District Court for the Northern District of Georgia.

Respectfully submitted,

Dated: May 7, 2019                          CHOATE & COMPANY, P.C.


*/s/ J. Samuel Choate, Jr.*
J. Samuel Choate, Jr.
Georgia Bar No. 124962
300 Main Street, Suite 201
St. Simons Island, GA 31522
(912) 264-4211 Telephone
(912) 264-1204 Facsimile
sam@choateandcompany.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**

MCKINLEY ALLIANCE GROUP, LLC and
AYSHA COOPER,

               Plaintiffs,

      v.

SARAH ADULT DAY SERVICES, INC.

             Defendant.

Docket No.:

## CERTIFICATE OF SERVICE

I, J. Samuel Choate, Jr., hereby certify that a true and correct copy of Notice of Removal was served on counsel of record, as listed below, in accordance with the Federal Rules of Civil Procedure, on this 3rd day of May, 2019, via United States first class mail, return receipt requested.

Bradley Shipe
SHIPE DOSIK LAW LLC
2107 North Decatur Road #347
Decatur, GA 30033

Dated: May 7, 2019

                                            /s/ J. Samuel Choate, Jr.
                                            J. Samuel Choate, Jr.

# Exhibit A

IN THE SUPERIOR COURT OF GWINNETT COUNTY

E-FILED IN OFFICE - AI
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
19-A-03474-9
4/15/2019 9:49 AM

CLERK OF SUPERIOR COURT

STATE OF GEORGIA

**McKinley Alliance Group, LLC**

**and Aysha Cooper**

_____

PLAINTIFF

CIVIL ACTION
NUMBER: **19-A-03479-9**

VS.

**Sarah Adult Day Services, Inc.**

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**S. Bradley Shipe**
**Shipe Dosik Law LLC**
**2107 N. Decatur Road #347, Decatur GA 30033**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____15_____ day of **April** _____, 20**19** .

Richard T. Alexander, Jr.,
Clerk of Superior Court

By _____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

A true copy Attest:
GEORGE T. MAIER
Sheriff of Stark County
By _____ Deputy

E-FILED IN OFFICE - LW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**19-A-03474-9**
**4/12/2019 9:37 AM**

CLERK OF SUPERIOR COURT

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

MCKINLEY ALLIANCE GROUP, LLC )
and AYSHA COOPER, )
           )
  Plaintiffs, )
           )
vs. )  **Case No.**
           )
SARAH ADULT DAY SERVICES, INC., )  **19-A-03474-9**
           )
  Defendant, )

### VERIFIED COMPLAINT FOR INTERLOCUTORY AND PERMANENT INJUNCTIONS, FOR TEMPORARY RESTRAINING ORDER, AND FOR DECLARATORY RELIEF

**COME NOW**, the Plaintiffs, MCKINLEY ALLIANCE GROUP, LLC ("McKinley") and AYSHA COOPER ("Cooper"), and hereby files their Verified Complaint for Interlocutory and Permanent Injunctions, for Temporary Restraining Order, and for Declaratory Relief against the Defendant, SARAH ADULT DAY SERVICES, INC. ("Sarah"). In support hereof, McKinley and Cooper (the "Plaintiffs") shows the Court as follows:

### Introduction, Parties, Jurisdiction, and Venue

1. This action arises out of a franchise agreement between McKinley and Sarah. Plaintiffs seek injunctive and declaratory relief relating to restrictive covenants contained in the franchise agreement, as such covenants are unenforceable under Georgia law. This action does not seek any monetary damages.

2. McKinley is a Georgia corporation which does business in Gwinnett County, Georgia.

3. Cooper is a resident of Georgia. Cooper is the owner of McKinley.

4. Sarah is an Ohio corporation which is subject to the jurisdiction and venue of the

-1-

Court by virtue of the Georgia Long-Arm Statute. Sarah may be served through its registered agent, Pamela J. Jung, 1642 Cleveland Avenue, NW, Canton, Ohio 44703.

5.     Sarah and McKinley are parties to a March 31, 2009 Sarah Adult Day Services Franchise Agreement (the "Agreement") whereby McKinley has operated a franchise in Gwinnett County. A true and correct copy of relevant portions of the Agreement is attached hereto as **Exhibit "A"**.

6.     The Agreement includes several in-term and post-term restrictive covenants (the "Restrictive Covenants"), including:

- "[D]uring the term of this Agreement, neither Franchisee or any shareholder, member or partner (if Franchisee is a corporation, limited liability company or partnership), nor any member of its or their immediate families shall have any interest as an owner, investor, partner, director, officer, employee, consultant, representative or agent, or in any other capacity, in any other non-medical or medical companionship or any business, enterprise or activity competitive with a SARAH Business (a "Competitive Business) . . ." (Paragraph 7(C));

- "During the term of this Agreement, neither Franchisee, any shareholder, member or partner (if Franchisee is a corporation, limited liability company or partnership), nor any member of its or their immediate families shall divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement, or otherwise. Further, Franchisee shall not hire or attempt to hire or entice away any employee, representative, or a franchisee of SARAH or induce any employee, representative, or franchise of SARAH to terminate their

respective contractual relationships with SARAH." (Paragraph 7(C));

- "Franchise covenants with respect Franchisee and for a period of one (1) year following the expiration of this Agreement, that neither Franchisee nor any of its officers, directors, managers or employees shall, either directly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

  (1)    "Divert, or attempt to divert, any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, or to perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.

  (2)    "Own, maintain, operate, engage in, or have any financial or beneficial interest . . . advise, assist, or make loans to, any business that is of a character and concept similar to the SARAH Businesses. As used this Agreement, the term "similar" means a business which looks like, copies, imitates or operates in the manner similar to a SARAH Business, including, but not limited to, any senior care business, and which business is, or is intended to be, located within a fifty (5) mile radius of the location of any SARAH Business or within fifty (50) miles of the Franchised Business granted by this Agreement at any given time during that period; or

  (3)    "Provide, assist or perform seminars and comparable activities relating to businesses which are competitive or similar to SARAH Businesses." (Paragraph 17(F)).

7.     Cooper executed a Guaranty and Assumption of Obligations—a copy of which is attached hereto as **Exhibit "B"**—which purports to bind Cooper to the Restrictive Covenants contained in the Agreement.

8.     The Restrictive Covenants are unenforceable and invalid.

9.     The Agreement expires at 11:59 P.M. on April 14, 2019.

10.     Despite the fact that the Restrictive Covenants are unenforceable, Sarah has threatened that it would take action to try to enforce the Restrictive Covenants.

11.     Sarah has also alleged that the Restrictive Covenants preclude Plaintiffs from selling their business after the Agreement's termination so long as that business is operated within 50 miles of its current location or within 50 miles of any other Sarah business.

12.     Sarah's threats have already caused Plaintiffs harm, including causing Plaintiffs to forego other possible transactions, and Sarah's ongoing threats continue to cause Plaintiffs irreparable harm.

### Count One—Petition for Temporary Restraining Order and Interlocutory and Permanent Injunctions

Paragraphs 1 through 12 are incorporated into this Count One as if fully set forth herein.

13.     Plaintiffs will be imminently and irreparably harmed if Sarah is permitted to take any action against Plaintiffs to enforce the Restrictive Covenants.

14.     Plaintiffs are without an adequate remedy at law.

15.     Public policy favors enjoining Sarah, as Plaintiffs only seek to prevent Sarah from taking action which it is not allowed to do, i.e., seeking to enforce the unenforceable Restrictive Covenants.

16.     The Court should issue a temporary restraining order, as well as preliminary and

-4-

permanent injunctions, enjoining Sarah from seeking to enforce the Restrictive Covenants.

### Count Two—Declaratory Judgment

Paragraphs 1 through 16 are incorporated into this Count Two as if fully set forth herein.

17.　　The Restrictive Covenants contained in the Agreement are unenforceable.

18.　　Sarah contends that the Restrictive Covenants are enforceable and that Plaintiffs are bound by the Restrictive Covenants.

19.　　An actual controversy has arisen between Plaintiffs on the one hand and Sarah on the other hand with respect to Plaintiffs' obligations to comply with the Restrictive Covenants.

20.　　Plaintiffs are interested parties and are insure as to their legal rights, interest and status because of the Restrictive Covenants. Absent relief from the Court, Plaintiffs will be hindered in their actions and abilities within Georgia.

21.　　The Court should issue a declaratory judgment pursuant to O.C.G.A. § 9-4-1, et. seq., with such judgment declaring the Restrictive Covenants to be invalid as a matter of Georgia law.

**WHEREFORE**, Plaintiff prays that the Court:

(a)　　Set an expedited hearing on Plaintiffs' motions for a temporary restraining order and/or injunctive relief;

(b)　　Enter an order temporarily and permanently enjoining Sarah—or any person associated with Sarah or acting on its behalf—from attempting, in any way, and in any forum or jurisdiction, from seeking to enforce the Restrictive Covenants, from seeking to recover damages or any other remedies based on an alleged violation of the Restrictive Covenants; and from taking any other action which interferes with Plaintiffs rights to operate a business allegedly competing with Sarah;

-5-

(c)     Enter a judgment declaring the Restrictive Covenants to be invalid as a matter of Georgia law;

(d)     Award Plaintiffs their reasonable attorneys' fees and costs; and

(e)     Grant Plaintiffs such other and further relief as the Court deems just and equitable.

Respectfully submitted, this 12th day of April, 2019.

/s/ S. Bradley Shipe
S. Bradley Shipe
Georgia Bar No. 643015
SHIPE DOSIK LAW LLC
2107 North Decatur Road, #347
Decatur, GA 30033
(404) 946-3580
brad@shipedosiklaw.com
Attorneys for Plaintiffs

# EXHIBIT A

## SARAH ADULT DAY SERVICES FRANCHISE AGREEMENT

**THIS AGREEMENT** is made and entered into this _31st_ day of _March_, 2009, between **SARAH ADULT DAY SERVICES, INC.**, an Ohio corporation ("SARAH"), with an address of 800 Market Avenue North, Suite 1230, Canton, Ohio 44702 and Aysha and Desmond Cooper, or Corporate Assignee, individuals having a residence at 1740 Heatherglade Lane, Lawrenceville, Georgia (the "Franchisee").

1. ## PREAMBLES AND ACKNOWLEDGEMENTS

    A. **Preambles**.

    SARAH, as the result of the expenditure of time, skill, effort and money, has developed and owns a unique management and business system for older adults, ages 60 and above, and adults, ages 18 to 60, in need of health-related care and supervision ("SARAH Businesses").

    SARAH uses, promotes, and licenses certain trademarks, service marks, and other commercial symbols in operating SARAH Businesses, which have gained and will continue to gain public acceptance and goodwill, and may create, use and license other trademarks, service marks, and commercial symbols for SARAH Businesses (collectively, the "Marks").

    SARAH grants to persons who meet our qualifications and are willing to undertake the investment and effort a franchise to own and operate a SARAH Business offering the products and services SARAH authorizes while using SARAH's business formats, methods, procedures, signs, designs, layouts, standards, specification and Marks (the "System").

    Franchisee acknowledges that it has read this Agreement and SARAH's Offering Circular and that it understands and accepts the terms, conditions and covenants contained in this Agreement as being reasonably necessary to maintain SARAH's high standards of quality and service and the uniformity of those standards at all SARAH Businesses in order to protect and preserve the goodwill of the Marks.

    B. **Acknowledgements**.

    Franchisee acknowledges that it has conducted an independent investigation of the business contemplated by this Agreement and recognizes that, like any other business, the nature of the business conducted by SARAH may evolve and change over time, that an investment in a SARAH Business involves business risks and that the success of the venture is largely dependent upon the business abilities and efforts of Franchisee.

    SARAH expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guaranty, express or implied, as to the revenues, profits or success of the business venture contemplated by this Agreement. Franchisee acknowledges that it has not received or relied on any representations about the Franchise by SARAH, or its officers, directors, employees or agents, that are contrary to the statements made in SARAH's UFOC or to the terms in this Agreement, and further represents to SARAH, as an inducement to

CHGO\31169630.2

its entry into this Agreement, that Franchisee has made no misrepresentations in obtaining the Franchise.

### C.  Corporation, Limited Liability Company, or Partnership.

If Franchisee is at any time a corporation, limited liability company, or general, limited or limited liability partnership (collectively, an "**Entity**"), Franchisee agrees and represents that:

(1)     Franchisee will have the authority to execute, deliver, and perform its obligations under this Agreement and all related agreements, having obtained all required board of directors or other consents, and are only organized or formed and validly existing in good standing under the laws of the state of Franchisee's incorporation or formation;

(2)     Franchisee's organizational documents, operating agreement, or partnership agreement will recite that this Agreement restricts the issuance and transfer of any ownership interests in Franchisee, and all certificates and other documents representing ownership interests in Franchisee will bear a legend referring to this Agreement's restrictions;

(3)     Exhibit B to this Agreement completely and accurately describes all of Franchisee's owners and their interests in Franchisee;

(4)     Each of Franchisee's owners at any time during this Agreement's term will execute a Guaranty and Assumption of Obligations, or comparable document, in the form SARAH prescribes, undertaking personally to be bound, jointly and severally, by all provisions of this Agreement and any ancillary agreements between SARAH and Franchisee.  Subject to SARAH's rights and Franchisee's obligations under Section 14 of this Agreement, Franchisee and its owners agree to sign and deliver to SARAH revised versions of Exhibit B to reflect any changes in the information that Exhibit B now contains; and

(5)     The Franchised Business (as defined in Section 2 below) and other SARAH Businesses, if applicable, will be the only businesses you operate (although Franchisee's owners may have other, non-competitive business interests).

## 2.     GRANT OF FRANCHISE

A.     SARAH hereby grants to Franchisee upon the terms and conditions herein contained, the right, license and privilege and Franchise and Franchisee undertakes the obligation to own and operate a SARAH Business (the "**Franchised Business**") within a geographic area (the "**Area**") approved by SARAH in accordance with the provisions of this Agreement and to use the Marks in the operation of the Franchised Business, for a term of ten (10) years, commencing on the date of this Agreement.  Termination or expiration of this Agreement constitutes a termination or expiration of the Franchise.

2

B.    The location of the Franchised Business and description of the Area is identified in Exhibit A.  Franchisee shall not relocate the Franchised Business without SARAH's prior written consent.

C.    Except as provided in this Agreement, and subject to Franchisee's full compliance with this Agreement and any other Agreement between Franchisee or any of its affiliates and SARAH or any of its affiliates, neither SARAH nor any affiliate shall establish or authorize any person or entity other than Franchisee to establish a SARAH Business in the Area during the term of this Agreement.

D.    Notwithstanding the above, SARAH (on behalf of itself and its affiliates) retains the right, in its sole discretion and without granting any rights to Franchisee:

(i)    to itself operate, or to grant other persons the right to operate a SARAH Business at locations and on terms SARAH deems appropriate and outside the Area granted Franchisee herein; and

(ii)    to sell the services authorized for SARAH Businesses under other trademarks, service marks and commercial symbols through similar to dissimilar channels of distribution and pursuant to terms SARAH deems appropriate outside the Area.

E.    If Franchisee is unable to continue to operate the Franchised Business at the approved location in the Area because of an event of extenuating circumstances, then Franchisee may request SARAH's approval to relocate the Franchised Business to another site in the Area.

## 3.    SITE SELECTION, PLANS AND CONSTRUCTION

A.    Franchisee assumes all costs, liability, expense and responsibility for locating, obtaining and developing a site for the Franchised Business within the Area and for constructing and equipping the Franchised Business at the site.  Franchisee acknowledges that the location, selection, procurement and development of a site for the Franchised Business is Franchisee's responsibility; that in discharging this responsibility Franchisee may consult with real estate and other professionals of Franchisee's choosing; and that SARAH's rendering of assistance in the selection of a site does not constitute a representation, promise, warranty or guarantee, expressed or implied, by SARAH that the Franchised Business operated at that site will be profitable or otherwise successful.  Franchisee shall submit to SARAH, for SARAH's approval, detailed plans and specifications adopting SARAH's then-current standard plans and specifications and shall not be materially changed or modified without SARAH's prior written consent.

B.    Franchisee shall acquire the site by purchase or lease, at Franchisee's expense, as the location for the Franchised Business.  Franchisee's failure to acquire the site for the Franchised Business within the time and in the manner required constitutes a material breach of this Agreement.  After Franchisee acquires the site, pursuant to this Agreement, the location shall be described in Exhibit A.

C.    Franchisee is responsible for obtaining all zoning classifications and clearances which may be required by state or local laws, ordinances or regulations or which may be

3

constitute trademark infringement, unfair competition, or dilution, and for all costs reasonably incurred by Franchisee in the defense of any claim brought against it or in any proceeding in which it is named as a party, provided that Franchisee timely notifies SARAH of the claim or proceeding and has otherwise complied with this Agreement and that SARAH has the right to defend any claim. If SARAH defends the claim, SARAH has no obligation to indemnify or reimburse Franchisee with respect to any fees or disbursements of any attorney retained by Franchisee.

If it becomes advisable at any time, in SARAH's sole discretion, for SARAH and/or Franchisee to modify or discontinue use of any Mark, and/or use one or more additional or substitute trademarks or service marks, Franchisee agrees to comply within a reasonable time after notice by SARAH, and the sole liability and obligation of SARAH in any event is to reimburse Franchisee for the out-of-pocket costs of complying with this obligation.

## 7.  CONFIDENTIAL INFORMATION - COVENANTS

A.  SARAH possesses certain confidential information consisting of the methods, techniques, formats, specifications, procedures, information, systems and knowledge of and experience in the operation and franchising of a SARAH Business (the "**Confidential Information**"). SARAH must disclose the Confidential Information to Franchisee in furnishing Franchisee the Initial Training, the Operations Manual and any guidance provided to Franchisee during the term of this Agreement.

B.  Franchisee acknowledges and agrees that it will not acquire any interest in the Confidential Information, other than the right to utilize it in the development and operation of the Franchised Business during the term of this Agreement, and that the use or duplication of the Confidential Information in any other business would constitute an unfair method of competition. Franchisee acknowledges and agrees that the Confidential Information is proprietary and is a trade secret of SARAH and is disclosed to Franchisee solely on the condition that Franchisee agrees, and Franchisee does hereby agree, that it:

(1)  will not use the Confidential Information in any other business or capacity;

(2)  will maintain the absolute confidentiality of the Confidential Information during and after the term of this Agreement;

(3)  will not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and

(4)  will adopt and implement all reasonable procedures prescribed by SARAH to prevent unauthorized use or disclosure of the Confidential Information, including restrictions on disclosure to employees of the Franchised Business and the use of nondisclosure and noncompetition clauses in employment agreements with persons. If Franchisee obtains SARAH's prior written consent, which consent shall not be unreasonably withheld, the restrictions on Franchisee's disclosure and use of the Confidential Information shall not apply to:

CHI0010311169630.2

(a)    information, processes or techniques which are or become generally known in the adult day services industry, other than through disclosure (whether deliberate or inadvertent) by Franchisee; or

(b)    disclosure of Confidential Information in judicial or administrative proceedings to the extent Franchisee is legally compelled to disclose information, provided Franchisee has used its best efforts, and has afforded SARAH the opportunity, to obtain an appropriate protective order or other insurance satisfactory to SARAH of confidential treatment for the information required to be disclosed.

C.    Franchisee acknowledges and agrees that SARAH would be unable to protect its trade secrets against unauthorized use or disclosure and would be unable to encourage a free exchange of ideas and information among SARAH Businesses if franchised owners of SARAH Businesses were permitted to hold interests in any similar businesses. Therefore, during the term of this Agreement, neither Franchisee, any shareholder, member or partner (if Franchise is a corporation, limited liability company or partnership), nor any member of its or their immediate families shall have any interest as an owner, investor, partner, director, officer, employee, consultant, representative or agent, or in any other capacity, in any other non-medical or medical companionship or any business, enterprise or activity competitive with a SARAH Business (a "Competitive Business"), except for other SARAH Businesses operated under franchise agreements granted by SARAH and the ownership of securities listed on a stock exchange or traded on the over-the-counter market that represent one percent (1%) or less of that class of securities.

During the term of this Agreement, neither Franchisee, any shareholder, member or partner (if Franchisee is a corporation, limited liability company or partnership), nor any member of its or their immediate families shall divert or attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement, or otherwise. Further, Franchisee shall not hire or attempt to hire or entice away any employee, representative, or a franchisee of SARAH or induce any employee, representative, or a franchisee of SARAH to terminate their respective contractual relationships with SARAH.

D.    Franchisee agrees that SARAH has the perpetual right to use and authorize other SARAH Businesses to use, all ideas, concepts, methods and techniques relating to the development and/or operation of a Franchised Business conceived or developed by Franchisee and/or its employees during the term of this Agreement.

## 8.    RELATIONSHIP OF THE PARTIES/INDEMNIFICATION

A.    It is understood and agreed by the parties that this Agreement does not create a fiduciary relationship between them, that SARAH and Franchisee are independent contractors and that nothing in this Agreement is intended to make either party a general or special agent, legal representative, subsidiary, joint venturer, partner, employee or servant of the other for any purpose.

## 17.   POST-TERMINATION - COVENANTS

A.     Upon termination or expiration of this Agreement, all rights granted to Franchisee shall immediately terminate and:

(1)     Franchisee must immediately cease to operate the Franchised Business under this Agreement and must not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of SARAH;

(2)     Franchisee must immediately and permanently cease to use, in any manner whatsoever, any confidential methods, computer software, procedures and techniques associated with the System, and must immediately and permanently cease to communicate or order products from approved suppliers, must immediately and permanently cease to use the Marks and distinctive forms, slogans, signs, symbols and devices associated with the System. Franchisee must cease to use, without limitation, all signs, advertising materials, displays, stationery, forms and any other articles which display the Marks;

(3)     Franchisee must immediately pay to SARAH, within fifteen (15) days after the effective date of termination or expiration (without renewal) of the franchise, Royalties and any interest due SARAH or its affiliates on Royalties. Franchisee must contemporaneously with payment furnish a complete accounting of all amounts owed to SARAH and its affiliates;

(4)     Franchisee must, at its expense, immediately make modifications or alterations as are necessary to distinguish the Franchised Business office so clearly from its former appearance and other SARAH Businesses as to prevent any possibility of confusion by the public (including removal of all distinctive physical and structural features identifying SARAH Businesses and removal of all distinctive signs and emblems). Franchisee expressly acknowledges that its failure to make alterations will cause irreparable injury to SARAH and consents to entry, at Franchisee's expense, of any order, by any court of competent jurisdiction, authorizing SARAH or its agents to take action, if SARAH seeks such an order;

(5)     Franchisee must take action required to cancel all fictitious or assumed names or equivalent registrations relating to any of the Marks;

(6)     Franchisee must notify the telephone company and all listing agencies of the termination or expiration of Franchisee's right to use any telephone number and any regular, classified or other telephone directory listings associated with the Marks and to authorize transfer of same to or at the direction of SARAH. Franchisee acknowledges that as between SARAH and Franchisee, SARAH has the sole right to and interest in all telephone numbers and directory listings associated with the Marks, and Franchisee authorizes SARAH, and appoints SARAH and any officer of SARAH and its attorney in fact, to direct the telephone company and all listing agencies to transfer same to SARAH or at its direction, should Franchisee fail or refuse to do so, and the telephone company and all listing agencies may accept this direction or this Agreement as conclusive of the

28

exclusive right of SARAH in telephone numbers and directory listings and its authority to direct their transfer;

(7)     Franchisee shall, at SARAH's option, assign to SARAH any interest Franchisee has in any lease or sublease for the premises of the Franchised Business. In the event that SARAH does not elect to exercise its option to acquire the lease or sublease for the premises of the Franchised Business, Franchisee shall make such modifications or alterations to the former Franchised Business (including, without limitation, changing of all the interior wallpaper, the perimeter design lighting, decor, et al.) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other SARAH Businesses, and shall make such specific additional changes thereto as SARAH may reasonably request for that purpose. In the event Franchisee fails or refuses to comply with the requirements of this Section, SARAH shall have the right to enter upon the premises without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at the expense of Franchisee, which expense Franchisee agrees to pay upon demand; and

(8)     Franchisee must furnish to SARAH within thirty (30) days after the effective date of termination or expiration, evidence satisfactory to SARAH of Franchisee's compliance with the foregoing obligations.

B.     Franchisee must pay to SARAH all damages, costs and expenses, including reasonable attorneys' fees, incurred by SARAH in connection with obtaining any remedy available to SARAH for any violation of this Agreement and, after the termination or expiration of this Agreement, in obtaining injunctive or other relief for the enforcement of any provisions of this Agreement.

C.     Franchisee must immediately deliver to SARAH all Operations Manuals, software licensed by SARAH, records, files, instructions, correspondence, all materials related to operating the Franchised Business, including, without limitation, agreements, invoices, and any and all other materials relating to the operation of the Franchised Business in Franchisee's possession or control and all copies (all of which are acknowledged to be SARAH's property), and must not retain any copy or record of any of the foregoing, except Franchisee's copy of this Agreement and any correspondence between the parties and any other documents which Franchisee reasonably needs to compliance with any provision of law.

D.     Franchisee must comply with the restrictions on Confidential Information contained in this Agreement and must also comply with the non-competition covenants contained in this Agreement. Any other person required to execute similar covenants pursuant to this Agreement must also comply with the covenants.

E.     SARAH is entitled to assign any and all of its options in this Section 17 to any other party, without the consent of Franchisee.

F.     Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable training, trade secrets and confidential information, including,

29

CHGO1\31169630.2

without limitation, information regarding the operational, sales, inventory, control, merchandising, promotional and marketing methods and techniques of SARAH, list of approved suppliers and vendors, and additional techniques and information of SARAH and the System which are beyond the present skills and experience of Franchisee and Franchisee's managers and employees. Franchisee acknowledges that such specialized training, trade secrets and confidential information provide a competitive advantage and will be valuable to them in the development and operation of the Franchised Business, and that gaining access to this specialized training, trade secrets and confidential information is, therefore, a primary reason why Franchisee is entering into this Agreement. For the protection of the System, Franchisee shall require and obtain execution of contractual non-disclosure covenants from any employees or persons who have received training from SARAH. In consideration for this specialized training, trade secrets, confidential information and rights, Franchisee covenants with respect to Franchisee and for a period of one (1) year following the expiration of termination of this Agreement, that neither Franchisee nor any of its officers, directors, managers or employees shall, either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

(1)     divert, or attempt to divert, any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, or to perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System;

(2)     own, maintain, operate, engage in, or have any financial or beneficial interest (including any interests in any corporations, partnerships, trusts, limited liability companies, incorporated associations or joint ventures) advise, assist, or make loans to, any business that is of a character and concept similar to the SARAH Businesses. As used in this Agreement, the term "similar" means a business which looks like, copies, imitates or operates in a manner similar to a SARAH Business, including, but not limited to, any senior care business, and which business is, or is intended to be, located within a fifty (50) mile radius of the location of any SARAH Business or within fifty (50) miles of the Franchised Business granted by this Agreement at any given time during that period; or

(3)     provide, assist or perform seminars and comparable activities relating to businesses which are competitive or similar to SARAH Businesses.

The parties acknowledge and agree that each of the covenants contained in this Section 17 are reasonable limitations as to time, geographic area and scope of activity to be restrained and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of SARAH. The parties agree that each of the covenants in this Section 17 shall be construed as independent of any other covenant or provision of this Agreement.

G.     All obligations of the Franchisee which expressly or by their nature survive the expiration or termination of this Agreement continue in full force and effect after its expiration or termination and until they are satisfied or expire.

CHOO1G1169630.2

(1)       transportation shortages, inadequate supply of material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state or municipal government or any department or agency;

(2)       compliance with any law, ruling, order, regulation, requirement or instruction of any federal, state or municipal government or any department or agency;

(3)       acts of God;

(4)       fires, strikes, embargoes, war or riot; or

(5)       any other similar event or cause.

Any delay resulting from any causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable.

D.  **Specific Performance/Injunctive Relief.**  Nothing bars SARAH's right to obtain performance of the provisions of this Agreement and injunctive relief against threatened conduct that will cause it loss or damage, under customary equity rules, including applicable rules for obtaining restraining orders and preliminary injunctions.  Franchisee agrees that SARAH may have injunctive relief, upon due notice, in addition to further and other relief as may be available at equity or law.  Franchisee has remedies as may be available at equity or law, including the dissolution of injunction if the entry of injunction is vacated.

E.  **Rights of Parties are Cumulative.**  The rights of SARAH and Franchisee under this Agreement are cumulative and no exercise or enforcement by SARAH or Franchisee of any right or remedy precludes the exercise or enforcement by SARAH or Franchisee of any other right or remedy which SARAH or Franchisee is entitled by law to enforce.

F.  **Costs and Attorneys' Fees.**  If a claim for amounts owed by Franchisee to SARAH or any of its affiliates is asserted in any legal proceeding before a court of competent jurisdiction, or if SARAH or Franchisee is required to enforce this Agreement in a judicial proceeding, the party prevailing in the proceeding is entitled to reimbursement of its costs and expenses incurred, including reasonable accounting and legal fees.

G.  **Governing Law.**  To the extent not inconsistent with applicable law, this Agreement and the offer and sale of the Franchise is governed by the substantive laws (and expressly excluding the choice of law) of the State of Ohio.

H.  **Exclusive Jurisdiction.**  Franchisee and SARAH agree that any action arising out of or relating to this Agreement (including the offer and sale of the Franchise) shall be instituted and maintained only in a state or federal court of general jurisdiction in Stark County, Ohio and Franchisee irrevocably submits to the jurisdiction of that court and waives any objection it may have to either the jurisdiction or venue of the court.  Franchisee and SARAH agree that venue for any proceeding relating to or arising out of this Agreement shall be in Stark County, Ohio; provided, however, with respect to any action:

CRGO1011696302

(1)      for monies owed;

(2)      for injunctive or other extraordinary relief; or

(3)      involving possession or disposition of, or other relief relating to, real property SARAH may bring that action in any state or federal district court which has jurisdiction.

Franchisee and SARAH acknowledge that the agreement between the parties regarding applicable state law and forum set forth in this Agreement provides each of the parties with a mutual benefit of uniform interpretation of this Agreement and any dispute arising out of this Agreement or the parties' relationship created by this Agreement. Franchisee and SARAH further acknowledge the receipt and sufficiency of mutual consideration for this benefit.

I.  **Binding Effect**. This Agreement is binding upon the parties in this Agreement and their respective executors, administrators, heirs, assigns and successors in interest, and shall not be modified except by written agreement signed by both Franchisee and SARAH.

J.  **Construction**. This Agreement, the documents referred to in this Agreement, and the attachments to this Agreement, including the Exhibits, constitute the entire, full and complete Agreement between SARAH and Franchisee concerning the subject matter of this Agreement and supersedes all prior related agreements between SARAH and Franchisee. Except for those permitted to be made unilaterally by SARAH, no amendment, change or variance from this Agreement is binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.

Except as otherwise expressly provided, nothing in this Agreement is intended, nor shall be deemed, to confer any rights or remedies upon any person or legal entity who is not a party to this Agreement.

The headings of the several sections and paragraphs are for convenience only and do not define, limit or construe the contents of sections or paragraphs.

References in this Agreement to "Franchisee" apply to one or more persons or an Entity, as the case may be, and the singular usage includes the plural and the masculine and neuter usages include the other and the feminine.

If two (2) or more persons are at any time the owners of the Franchise and the Franchised Business, whether as partners or joint venturers, their obligations and liabilities to SARAH will be joint and several. References to "owner" mean any person holding a direct or indirect, legal or beneficial ownership interest or voting rights in Franchisee (or a transferee of this Agreement and the Franchised Business or an interest in Franchisee), including, without limitation, any person who has a direct or indirect interest in Franchisee (or a transferee), this Agreement, the Franchise, or the Franchised Business and any person who has any other legal or equitable interest, or the power to vest in himself or herself any legal or equitable interest, in their revenue, profits, rights or assets. "Person" means any natural person, corporation, limited liability company, general or limited partnership, unincorporated association, cooperative, or other legal

33

22.    **ARBITRATION**

Except as specifically otherwise provided in this Agreement, and except for any dispute arising out of the payment of monies owed by Franchisee to SARAH, the parties agree that any and all disputes between them shall be determined solely and exclusively by arbitration under the Federal Arbitration Act, as amended, and in accordance with the rules then obtaining of the American Arbitration Association or any successor, at its offices nearest SARAH's principal place of business, unless the parties otherwise agree in writing.  The parties agree that any arbitration between SARAH and Franchisee shall be Franchisee's individual claim and that all claims subject to arbitration shall not be arbitrated on a class-wide basis.

This Agreement shall be executed in multiple copies, each of which shall be deemed an original.

**IN WITNESS WHEREOF**, the parties have executed, sealed and delivered this Agreement in duplicate on the date recited in the first paragraph.

SARAH ADULT DAY SERVICES,
INC., an Ohio corporation

By: _____
Merle D. Griff, Ph.D.

Title:   President

Aysha & Desmond Cooper or
Corporate Assignee

By: _____
Aysha Cooper

Title: _____

By: _____
Desmond Cooper

Title: _____

**(IF INDIVIDUALS):**

_____
[Signature]

_____
[Print Name]

_____
[Signature]

_____
[Print Name]

36

# EXHIBIT B

## GUARANTY AND ASSUMPTION OF OBLIGATIONS

**THIS GUARANTY AND ASSUMPTION OF OBLIGATIONS** is given this 3 day of March , 2009, by Aysha & Desmond Cooper ("**Guarantor**")

In consideration of, and as an inducement to, the execution of that certain Franchise Agreement of even date (the "**Agreement**") by SARAH Adult Day Services, Inc. (the "**Franchisor**"), and with _____ a(n) _____ corporation, each of the _____ undersigned hereby personally and unconditionally (a) guarantees to Franchisor, and its successors and assigns, for the term of the Agreement and as provided in the Agreement, that _____ ("**Franchisee**") shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and (b) agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, both monetary obligations and obligations to take or refrain from taking specific actions or to engage or refrain from engaging in specific activities. Each of the undersigned waives: (1) acceptance and notice of acceptance by Franchisor of the foregoing undertakings; (2) notice of demand for payment of any indebtedness or nonperformance of any obligations guaranteed; (3) protest and notice of default to any party with respect to the indebtedness or nonperformance of any obligations guaranteed; (4) any right he/she may have to require that an action be brought against Franchisee or any other person as a condition of liability.

Each of the undersigned consents and agrees that: (1) his/her direct and immediate liability under this guaranty shall be joint and several; (2) he/she shall render any payment or performance required under the Agreement upon demand if Franchisee fails or refuses punctually to do so; (3) liability shall not be contingent or conditioned upon pursuit by Franchisor of any remedies against Franchisee or any other person; and (4) liability shall not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which Franchisor may grant to Franchisee or to any other person, including the acceptance of any partial payment or performance, or the compromise or release of any claims, none of which shall in any way modify or amend this guaranty, which shall be continuing and irrevocable during the term of the Agreement.

Guarantor hereby consents and agrees that:

(a)    Guarantor's liability under this undertaking shall be direct, immediate, and independent of the liability of, and 'shall be joint and several with, Franchisee and the other owners of Franchisee;

(b)    Guarantor shall render any payment or performance required under the Franchise Agreement upon demand if Franchisee fails or refuses punctually to do so;

CHGO\30912307.1

(c)     This undertaking will continue unchanged by the occurrence of any bankruptcy with respect to Franchisee or any assignee or successor of Franchisee or by any abandonment of the Franchise Agreement by a trustee or Franchisee.  Neither the Guarantor's obligations to make payment or render performance in accordance with the terms of this undertaking nor any remedy for enforcement shall be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Franchisee or its estate in bankruptcy or of any remedy for enforcement, resulting from the operation of any present or future provision of the US Bankruptcy Act or other statute, or from the decision of any court or agency;

(d)     Franchisor may proceed against Guarantor and Franchisee jointly and severally, or Franchisor may, at its option, proceed against Guarantor, without having commenced any action, or having obtained any judgment against Franchisee. Guarantor hereby waives the defense of the statute of limitations in any action hereunder or for the collection of any indebtedness or the performance of any obligation hereby guaranteed; and

(e)     Guarantor agrees to pay all reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempt collection of amounts due pursuant to this undertaking or any negotiations relative to the obligations hereby guaranteed or in enforcing this undertaking against Guarantor.

(f)     This Guaranty shall be construed and enforced in accordance with the laws of the State of Ohio. Venue shall be Stark County, Ohio.

IN WITNESS WHEREOF, each of the undersigned has affixed his/her signature on the same day and year as the Agreement was executed.

GUARANTOR(S)                                    PERCENTAGE OWNERSHIP IN
                                                                      FRANCHISEE

_____          _____
Aysha Cooper

_____          _____
Desmond Cooper

2

| Owner's Name | Description and Amount of Interest |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Franchisee's Managing Owner (as defined in the Franchise Agreement) is _____
_____.

**SARAH ADULT DAY SERVICES,**
**INC., an Ohio corporation**

By: _____
    Merle Griff, Ph.D.

Title:  President

**Aysha & Desmond Cooper, or**
**Corporate Assignee**

By:  Aysha Cooper

Title: _____

By:  Desmond Cooper

Title: _____


Dated:  _____

**(IF INDIVIDUALS):**


_____
[Signature]


_____
[Print Name]


_____
[Signature]


_____
[Print Name]


Dated:  _____

B-2

19-A-03474-9

# VERIFICATION

STATE OF GEORGIA

COUNTY OF GWINNETT

PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, AYSHA COOPER, who after first being duly sworn, states that he has read the foregoing **Verified Complaint for Interlocutory and Permanent Injunctions, for Temporary Restraining Order, and for Declaratory Relief** and that the information contained therein is true and correct.

_____
Aysha Cooper, individually and on behalf of
McKinley Alliance Group, Inc.

Sworn and subscribed before me
this 12th day of April, 2019.

Farkhondeh Emma Mirhosseini
Notary Public



19-A-03474-9

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party with a copy of the foregoing **Verified Complaint for Interlocutory and Permanent Injunctions, for Temporary Restraining Order, and for Declaratory Relief** by email and by depositing a copy of same in the United States Mail in a properly addressed envelope with adequate postage affixed thereon addressed as follows:

Frank A. Reino, Esq.
Fisher Zucker LLC
21 South 21st Street
Philadelphia, Pennsylvania 19103
freino@fisherzucker.com

This 12th day of April, 2019.

_/s/ S. Bradley Shipe_
S. Bradley Shipe
Georgia Bar No. 643015
SHIPE DOSIK LAW LLC
2107 North Decatur Road, #347
Decatur, GA 30033
(404) 946-3580
brad@shipedosiklaw.com
Attorneys for Plaintiffs

-1-

Exhibit B

# Case Information

19-A-03474-9 | MCKINLEY ALLIANCE GROUP VS SARAH ADULT DAY SERVICES

| Case Number | Court | Judicial Officer |
|---|---|---|
| 19-A-03474-9 | Division 9 | Mason, Tracey D |
| File Date | Case Type | Case Status |
| 04/12/2019 | Other General Civil* | Pending |

# Party

Plaintiff

MCKINLEY ALLIANCE GROUP LLC

Active Attorneys ▾

Lead Attorney
SHIPE, S BRADLEY
Retained

Plaintiff

COOPER, AYSHA

Active Attorneys ▾

Lead Attorney
SHIPE, S BRADLEY
Retained

Defendant

SARAH ADULT DAY SERVICES INC

# Events and Hearings

04/12/2019 Summons

04/12/2019 Complaint

04/12/2019 Motion*

04/12/2019 Affidavit

04/19/2019 Converted Service Event

04/19/2019 Summons ▾

Anticipated Server

Anticipated Method
Serving Officer

Serving Method
**Corporation**

04/30/2019 Sheriffs Entry of Service